**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: October 4, 2021
Date Decided: January 19, 2022

Joseph C. Schoell, Esquire
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801

James M. Yoch, Jr., Esquire
Kevin P. Rickert, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Re: *Agspring, LLC v. NGP X US Holdings, L.P.*
C.A. No. 2019-1021-JRS

Dear Counsel:

This Letter Opinion addresses Plaintiff, Agspring, LLC's Motion for Summary Judgment, Declaratory Judgment, and to Vacate the Arbitration Award ("Agspring's Motion"), and Defendant, NGP X US Holdings, L.P.'s Motion for Summary Judgment to Confirm Arbitration ("NGP's Motion"). For the reasons explained below, Agspring's Motion is DENIED and NGP's Motion is GRANTED.

## I. BACKGROUND

In 2012, Defendant, NGP X US Holdings LP ("NGP"), Randal Linville and Bradley Clark formed Agspring, LLC ("Agspring"), a company focused on

agricultural supply chains. NGP owned approximately 98% of Agspring's membership interests.[1] In connection with the formation of Agspring, the parties entered into two agreements in 2012 that are relevant here: the Limited Liability Company Agreement of Agspring, LLC (the "LLC Agreement") and the Advisory Services, Reimbursement and Indemnification Agreement (the "Services Agreement") (together, the "2012 Agreements").[2] The LLC Agreement governed Agspring's operations, and the Services Agreement called for NGP to provide advisory services to Agspring for $75,000 a year.[3] These agreements governed the relationship between NGP and Agspring and contained certain advancement, arbitration and indemnification rights that are central to this dispute.[4]

---

[1] Am. Verified Compl. ("Compl.") (D.I. 61) ¶ 4.

[2] *Id.*

[3] Compl. Ex. B-1, B-2.

[4] Compl. Ex. B-1 at 34–35, 47–49; Compl. Ex. B-2 at 2–6.

## A. The AIM Transaction and the Aftermath

In December of 2015, NGP sold its interest in Agspring to American Infrastructure MLP Funds ("AIM") (the "Transaction") under a Membership Interest Purchase and Contribution Agreement (the "MIPCA").[5] To consummate the Transaction, AIM created Agspring, LP, which was later converted into Agspring Holdco, LLC ("Holdco"), a plaintiff in a related action pending in this Court.[6] The financing for the Transaction was provided by LVS II SPE XVIII, LLC, HVS V, LLC, and TOBI XXI, LLC, each of which is also a plaintiff in the related action.[7]

---

[5] Compl. ¶ 1.

[6] C.A. 2019-0567-JRS.

[7] Am. Compl. ("Sale Action Compl.") (D.I. 28) (C.A. 2019-0567-JRS) ¶ 3. In the related litigation, Plaintiffs allege, among other things, that NGP, Clark and Linville made fraudulent representations and warranties in the MIPCA. Sale Action Compl. ¶¶ 4–10. Specifically, it is alleged that Defendants knew that the financial outlook for Agspring's operating subsidiaries had taken a significant turn for the worse pre-closing and instructed Agspring employees to doctor financial projections to achieve the numbers necessary for the deal to close. Sale Action Compl. ¶¶ 6–7. For example, Plaintiffs allege that Defendants forecasted $33 million in EBITDA to Plaintiffs in late November 2015 when, just six months later, the actual EBITDA was only $701,900. Sale Action Compl. ¶ 10.

On October 1, 2018, Clark and Linville prevailed in an arbitration against Agspring GP, Agspring LP's general partner, and obtained an award compensating them for amounts owed "in connection with their resignation."[8]  Agspring GP claimed it had no assets, and Holdco (formerly Agspring LP) refused to cover the award.[9]  In January 2019, Clark and Linville sued Agspring, Agspring GP, Holdco and others in Kansas state court, attempting to collect the arbitration award and asserting related causes of action.[10]

Holdco brought its suit regarding the Transaction in April 2019.[11]  A month later, NGP demanded advancement and indemnification from Agspring under the 2012 Agreements.[12]  Agspring refused.  On December 13, 2019, NGP initiated an arbitration against Agspring to enforce its advancement rights as required by the

---

[8] Compl. ¶ 26.

[9] Compl. ¶¶ 26–27; Def. NGP X US Hldgs., L.P.'s Corrected Omnibus Br. Regarding Arbitration Award and Other Matters ("NGP Omnibus Br.") (D.I. 78) at 7; *id.* Ex. 13.

[10] Compl. ¶ 26; NGP Omnibus Br. at 7.

[11] Compl. ¶ 22.

[12] Compl. ¶ 24.

2012 Agreements.[13]   In response, Agspring filed this action and sought an injunction preventing NGP from prosecuting its arbitration claims, arguing that the MIPCA superseded the 2012 Agreements and required NGP to bring its advancement and indemnification claims in Delaware courts.[14] On March 23, 2020, after briefing and a hearing, the Court denied the request for injunctive relief and ruled that the parties "evinced a clear and unmistakable intention [in the 2012 Agreements] to arbitrate the issue of arbitrability."[15]

## B. The Arbitration Orders

After briefing and oral argument, the arbitration panel entered Interim-Award #1.[16]   There, the panel concluded that the 2012 Agreements' arbitration provisions survived the Transaction and governed the advancement dispute

---

[13] Compl. ¶¶ 31–32.

[14] Compl. ¶¶ 34–35.

[15] NGP Omnibus Br. Ex. 23 (*Agspring, LLC v. NGP X US Hldgs., L.P.*, 2019-1021-AGB, at 14:1–3 (Del. Ch. Mar. 23, 2020) (TRANSCRIPT) (Bouchard, C.)).

[16] NGP Omnibus Br. Ex. 28 ("Interim-Award 1").

between the parties.[17]  In reaching that conclusion, the panel held the following: the merger and integration clauses in the MIPCA did not preclude enforcement of the 2012 Agreements' arbitration provisions because the MIPCA dealt with different parties and subject matter; the MIPCA's forum selection clause did not apply to the arbitration claims; the 2012 Agreements provided for the assignment and survival of the advancement rights; and Defendants did not waive their advancement rights by not disclosing them in the MIPCA's schedules even though the MIPCA required disclosure of indemnity contracts, claims of rights, and encumbrances.[18]

In Order #2, entered on March 10, 2021, the arbitration panel reiterated that the arbitration clauses in the 2012 Agreements were in full force and effect and asked the parties to submit briefing on a narrow set of issues.[19]  In doing so, the panel expressly rejected Agspring's argument that, even if the arbitration provisions

---

[17] *Id.* at 1.

[18] *Id.* at 8–17.

[19] NGP Omnibus Br. Ex. 30 ("Order 2").

survive, the MICPA's exclusive jurisdiction provision required NGP's claims to be adjudicated in Delaware.[20]

In Order #3, among other things, the arbitration panel highlighted the summary nature of advancement proceedings, noting that Delaware courts "have required advancement while the parties litigate the validity of the underlying agreements that provide for advancement and indemnification."[21] In this regard, the panel observed that Agspring could attempt to recoup improperly paid advancement funds in a plenary proceeding.[22]

Then, in Order #5,[23] the panel held that the clear and unambiguous terms of the Services Agreement entitled NGP to advancement from Agspring in connection with the Kansas litigation, the arbitration and both of the actions filed in this court.[24]

---

[20] *Id.* at 3–4.

[21] NGP Omnibus Br. Ex. 24 ("Order 3") at 3.

[22] *Id.* at 5 (relying on *Trascent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 110 (Del. 2018)).

[23] Order #4 addressed a scheduling issue. NGB Omnibus Br. Ex. 47.

[24] NGP Omnibus Br. Ex. 33 ("Order 5") at 4.

Starting in April 2021, NGP began submitting advancement claims to Agspring.  Rather than pay the full amount of the claim, or half the amount while disputing the claim as provided for in Order #5,[25] Agspring refused NGP's claims in their entirety.  According to Agspring, it lacks sufficient liquidity to pay advancement and is essentially insolvent.[26]

## C. The Motions at Issue

On April 26, 2021, Agspring brought a motion for summary judgment, declaratory judgment, and to vacate the arbitration award so that it could "present

---

[25] *Id.* at 8 ("If Agspring believes that the amounts claimed for advancement are unreasonable, it may file an opposition.  Agspring will pay the undisputed amount contemporaneously with its response.  If Agspring disputes more than 50% of the amount claimed, it will pay 50% of the amount sought, and NGP's counsel shall hold the amount exceeding the undisputed amount in its escrow account pending resolution of the dispute regarding the contested portion.").

[26] *E.g.*, Combined Reply Br. in Supp. of Agspring Holdco, LLC's Mots. to Am. the Compl. and for Prelim. Inj. and Agspring, LLC's Mot. for Declaratory J. and to Vacate the Arbitration Award ("PRB") (D.I. 84) at 24.  ("NGP will likely cause Agspring, which it sold to Holdco, to be rendered inoperable and/or to file bankruptcy through its advancement demand for more than $7 million.  Agspring's Chief Financial Officer has sworn this to be true and explained that Agspring's assets are all subject to liens.  Moreover, the Verified Complaint states Agspring defaulted on a Material Loan in October 2018 and remains in default.  NGP has been provided audited financial statements in discovery which support Agspring's dire financial circumstances.").

Agspring's arguments regarding its rights under the MIPCA in one place, ideally to obtain relief from this Court, but at a minimum, to resolve this case to final judgment such that Agspring can take an appeal."[27]  Specifically, Agspring asks this Court to vacate the arbitration order awarding advancement to NGP because the arbitration panel: "(1) acted without jurisdiction; (2) rewrote [the] language of the MIPCA; (3) disregarded the longstanding rule that a later agreement between the same parties controls over conflicting provisions in an earlier agreement; and (4) ignored the doctrine of quasi-estoppel."[28]

Agspring also asks the Court to enter a declaratory judgment that: "(1) NGP is estopped from enforcing advancement against Agspring because it failed to disclose that right in the MIPCA; (2) NGP must specifically perform according to the indemnification procedures in Article IX of the MIPCA and stop its efforts to enforce the Services Agreement; and (3) the JAMS arbitration panel lacks

---

[27] Pl.'s Opening Br. in Supp. of its Mot. for Summ. J., Declaratory J., and to Vacate the Arbitration Award ("POB") (D.I. 62) at 3.

[28] *Id.* at 4.

jurisdiction under the Services Agreement in light of the MIPCA—the later-in-time contract between the parties."[29]

On May 13, 2021, NGP filed an answer and verified counterclaim, along with a competing motion for summary judgment to confirm the arbitration panel's award.[30]

## II.  ANALYSIS

The parties present the two sides of the arbitration coin—Agspring seeks to vacate the arbitrators' orders while NGP seeks to have the orders confirmed. I address those issues first before addressing the remaining (peripheral) issues presented in the cross-motions.

### A. Vacatur Standard of Review

By seeking to vacate an arbitrator's final order, Agspring has chosen to climb a nearly vertical hill.  "[A] court's review of an arbitration award is one of the

---

[29] *Id.* at 3–4.

[30] D.I. 70–71.

narrowest standards of judicial review in all of American jurisprudence."[31] "Arbitration awards . . . are not lightly disturbed, and '[c]ourts must accord substantial deference to all decisions of arbitrators.'"[32] "To successfully convince the Court to vacate the award of an arbitration panel, the movant must show 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"[33] Indeed, our Supreme Court has been quite clear on this point. "[Q]uestionable legal support or a misreading of the law alone are insufficient to vacate an arbitration award."[34]

Delaware courts condone vacatur only "where the arbitrator acts in 'manifest disregard' of the law," meaning that "the arbitrator (1) knew of the relevant legal principles, (2) appreciated that this principle controlled the outcome of the disputed

---

[31] *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008) (citing *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004)).

[32] *Id.* (citing *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 70 (1st Cir. 2008)).

[33] *Id.* at 732–33 (citing *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002)).

[34] *Auto Equity Loans of Del., LLC v. Baird*, 232 A.3d 1293, 2020 WL 2764752, at *3 (Del. 2020) (TABLE).

issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[35]  With respect to decisions grounded in contract interpretation, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision."[36]

### B. Agspring Offers No Basis to Vacate the Arbitration Panel's Orders

Agspring argues the arbitrator's orders should be vacated on four grounds: (1) the panel acted without jurisdiction, (2) the panel altered the unambiguous language of the MIPCA, (3) the panel disregarded the rule that the most recent contract controls, and (4) the panel disregarded the doctrine of quasi-estoppel. As explained below, none of these grounds justify vacatur.

*First*, the arbitration panel did not show manifest disregard for the law or act outside of its jurisdiction when it determined that the advancement claim was

---

[35] *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) (citing *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 Fed. App'x 172, 177 (3d Cir. 2010)).

[36] *Id.* (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)) (alterations omitted).

arbitrable. Last year, this Court deferred the substantive arbitrability question to the arbitrator when it ruled that the parties "evinced a clear and unmistakable intention to arbitrate the issue of arbitrability."[37] That decision vested the arbitrator with jurisdiction.[38]

*Second*, Agspring's argument that the panel "altered and amended" the language of the MIPCA is misplaced and falls well short of the kind of error that would justify vacatur.[39] Agspring asserts that the panel altered Section 10.11 of the MIPCA in reaching its determination that the MIPCA's forum selection clause did not supersede the arbitration clauses in the 2012 Agreements. Section 10.11(b) states that the parties submit to the exclusive jurisdiction of Delaware courts

---

[37] NGP Omnibus Br. Ex. 23 (*Agspring, LLC v. NGP X US Hldgs., L.P.*, 2019-1021-AGB, at 14:1–3 (Del. Ch. Mar. 23, 2020) (TRANSCRIPT) (Bouchard, C.)).

[38] Agspring argues that "[t]his Court is not bound by its earlier decision that arbitrability under the 2012 Agreements must be decided by the arbitrator." PRB at 35. That argument ignores both the law of the case doctrine and that Chancellor Bouchard's determination that substantive arbitrability should be decided by the arbitrator in this case was a correct application of settled Delaware law. *See generally Ins. Corp. of Am. v. Barker*, 628 A.2d 38, 40–41 (Del. 1993) (explaining and applying law of the case doctrine).

[39] PRB at 35–38.

"with respect to any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby, and each Party irrevocably agrees that all claims in respect of such dispute or proceeding" will be heard in Delaware courts.[40] According to Agspring, the panel "omitted" the language "all claims in respect of such dispute or proceeding" from its analysis.

Agspring's characterization of the panel's decision is misguided given that the panel cited the forum selection provision in its entirety.[41] That fact aside, the language Agspring says was ignored does not change the panel's analysis and resulting conclusion that the forum selection clause does not mention the 2012 arbitration clauses, or that a prior agreement involving one entity, in certain circumstances, may continue to govern the rights and obligations of a successor entity, even when the successor entity enters into subsequent agreements that touch on the same subject matter.[42] Nor can it be said that the phrase "all claims in respect

---

[40] Interim-Award 1 at 10; Compl. Ex. B-3 ("MIPCA") § 10.11(b).

[41] Interim-Award 1 at 10.

[42] *Id.* at 12–13.

of such dispute or proceeding" necessarily broadens the phrase "any dispute arising out of or relating to this agreement," and certainly not to the extent where the panel egregiously flouted the law by failing to construe the phrase in that manner.

The panel also held that the MIPCA's forum selection clause did not apply to the arbitration claims. Here again, it concluded that "there may be circumstances when a prior entity agreement continues to govern the rights and obligations of a signatory and a successor entity despite the existence of a new entity agreement."[43] The panel then analogized this court's opinion in *Griffin*, noting that the MIPCA's forum selection clause does not mention the 2012 Agreements, nor does the language "arising out of or relating to this Agreement"[44] "logically govern disputes arising from earlier contracts or agreements."[45] Again, the panel's analysis does not come close to a manifest disregard of our law. Instead, it reflects the panel's

---

[43] *Id.* at 12 (citing *3850 & 3860 Colonial Blvd., LLC v. Griffin*, 2015 WL 894928, at *5 (Del. Ch. Feb. 26, 2015)).

[44] MIPCA § 10.11(b).

[45] Interim-Award 1 at 13.

commitment to follow precedent to inform its interpretation of disputed contractual language.

Agspring then argues that the panel substantially erred by "completely ignor[ing] Article IX when it ruled on NGP's request for advancement" and "allow[ed] NGP to assert a claim unavailable to it under the MIPCA."[46]  But the panel found that NGP's advancement claim was not "a dispute arising out of or relating to" the MIPCA, but arose instead under the Services Agreement, and thus the MIPCA did not supersede the Services Agreement with respect to advancement.[47]  Under that interpretation, Article IX would not be controlling.  This holding is a matter of contract interpretation about which, at best, reasonable minds might differ, not a manifest disregard of our law justifying vacatur.

The same analysis and outcome apply to Agspring's claims that the panel "read out of the MIPCA NGP's promise that it had released and delivered Agspring

---

[46] POB at 37.

[47] Interim-Award 1 at 13 ("[The 2012 Services Agreement] governed NGP's provision of advice and services to Agspring.  The MIPCA governs NGP's sale of its membership interests in Agspring, a different subject.").

free and clear of any encumbrances" and "that it had no claims against the company."[48]  The panel rejected Agspring's argument that NGP's failure to specify the 2012 Services Agreement in the schedules rendered that contract terminated and unenforceable.  In doing so, the panel expressly considered the parties' arguments before finding that "NGP's failure to list the 2012 Agreements" on the schedules "did not waive its rights under the agreements' arbitration clauses."[49]

The panel's analysis on this point is admittedly thin.  Still, the panel noted that "NGP addressed Agspring's argument in a brief to the Chancery Court," where NGP argued that "Agspring failed to produce any evidence suggesting that NGP agreed to waive its express right to a four-year indemnification under the 2012 Services Agreement," and that "NGP would not be obliged to list the agreement if it believed that Agspring's continuing indemnification obligations would likely not meet the $200,000 threshold."[50]  This shows, at minimum, that the panel considered

---

[48] POB at 37–38.

[49] Interim-Award 1 at 16.

[50] *Id.*

NGP's arguments and found them persuasive. Again, reasonable minds may differ on the holding, but that is a far cry from providing a basis for vacatur.

*Third*, Agspring argues that the panel's "editing" of the MIPCA enabled them "to ignore black letter Delaware law that the later-in-time agreement between the same parties controls to the extent it conflicts with an earlier agreement."[51] While I agree that Agspring has accurately stated Delaware law,[52] the panel determined that the contracts related to a different subject matter in certain material respects and, therefore, did not conflict.[53] I cannot say the panel's interpretation of the agreements is so unreasonable that the language of the MIPCA was utterly disregarded and rewritten.

*Finally*, Agspring asserts that the Court should vacate the arbitration award because the panel refused to consider the doctrine of quasi-estoppel. Agspring

---

[51] POB at 38.

[52] *See, e.g.*, *County Life Homes, Inc. v. Shaffer*, 2007 WL 333075, at *5 (Del. Ch. Jan. 31, 2007) ("When a later-in-time contract addresses the same issues . . . , it will prevail in the absence of evidence to the contrary.").

[53] Interim-Award 1 at 10–13.

argued to the panel that this doctrine barred NGP from asserting its advancement rights because NGP took inconsistent positions regarding potential advancement obligations in the MIPCA, on the one hand, and in the Services Agreement, on the other. But, as NGP points out, the panel consciously limited its decision to the advancement stage and the face of the 2012 Agreements.[54] Contrary to Agspring's argument, the panel's refusal to consider a merits-based argument in an effort to avoid expanding a summary advancement proceeding is not tantamount to "ignor[ing] the law."[55]

For all these reasons, I decline to vacate any of the arbitration panel's orders.

### C. Plaintiff's Request for Summary Judgment and Declaratory Judgment Must Be Denied

Agspring seeks summary judgment and declaratory judgment on several grounds: (1) JAMS has no jurisdiction in light of the MIPCA, (2) the MIPCA prevents enforcement of the advancement provision of the Services Agreement, and

---

[54] Order 3 at 4–7.

[55] POB at 39; *see SPX Corp.*, 94 A.3d 745, 750 (holding that to justify vacatur, the arbitrator's order must reflect a "manifest disregard of the law").

(3) NGP is estopped from enforcing the advancement provision of the undisclosed Services Agreement. As explained below, the Court's confirmation of the arbitration panel's orders necessarily results in denial of Agspring's motions for summary and declaratory judgment.

"Delaware courts give valid and final arbitration awards 'the same effect as a court's judgment under the doctrine of *res judicata*.'"[56] NGP argues that claim preclusion prevents re-litigation of issues decided by the arbitration panel. I agree.[57]

---

[56] *Global Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 338214, at *4 n.30 (Del. Ch. Jan. 29, 2010) (citing *Mehiel v. Solo Cup Co.*, 2007 WL 901637, at *5 (Del. Super. Ct. Mar. 26, 2007)); *see also Cooper v. Celente*, 1992 WL 240419, at *5–6 (Del. Super. Ct. Sept. 3, 1992) ("This Court decides that an arbitration award such as the one issued in this dispute has res judicata effect on subsequent litigation efforts in the courts. This holding is in accordance with Delaware's strong public policy in favor of arbitration . . . .").

[57] In its Reply Brief, Agspring argues that neither issue nor claim preclusion apply. PRB at 28–32. It argues that the arbitration panel's holding was narrow and that it only addressed the MIPCA's effect on the obligation to arbitrate, not advancement. *Id.* at 29. I cannot agree that "[n]one of the Panel's orders implicitly made findings or depended on deciding Agspring's rights under the MIPCA." *Id.* at 30–31. As noted, the panel expressly considered specific provisions of the MIPCA in determining that the 2012 Agreements' arbitration provisions survived and governed the advancement dispute before eventually holding that those agreements entitled NGP to advancement. Interim-Award 1 at 7–17. Moreover, despite Agspring's assertion that "Agspring's claims fall within the exclusive jurisdiction of this court," the arbitration provisions and ultimately the contractual advancement rights were submitted for interpretation and application at arbitration— where Agspring lost. PRB at 32. In order to give proper effect to the arbitration award,

"The doctrine of res judicata provides that a final judgment on the merits bars further claims by the same parties or their privies based on the same cause of action."[58]  As explained below, the arguments made by Agspring to the arbitration panel and those proffered here are essentially identical.

*First*, Agspring argues that the panel did not have jurisdiction because of the MIPCA.  Agspring makes several arguments in support of this premise.  It argues that the MIPCA governs NGP's claims for advancement, not the 2012 Agreements, because the MIPCA is the later-in-time agreement.  But, as noted above, the arbitration panel explicitly rejected this argument.

Agspring also argues that the panel did not have jurisdiction because the MIPCA superseded the 2012 LLC Agreements.  Again, the arbitration panel considered this very argument and found it unpersuasive.  In so doing, it held that

---

this Court must deny Agspring's motions.  *See, e.g.*, *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 90 (Del. Ch. 2013) (finding the arbitration panel's determination was "entitled to issue-preclusive effect"); *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 138 (Del. Ch. 2014) (noting that "for purposes of issue and claim preclusion, this court has treated an arbitration as a prior action").

[58] *Hercules Inc. v. AIU Ins. Co.*, 783 A.2d 1275, 1278 (Del. 2000).

NGP's arbitration rights under the 2012 Agreements survived NGP's assignment of its interest in Agspring. The panel observed that "Section 5.5(d) of the 2012 LLC Agreement expressly provides for the survival of NGP's indemnification rights after NGP should cease to be a member."[59] It also distinguished Agspring's cited authority, noting that the principal case Agspring relied upon "is inapposite because the agreement under consideration did not contain a survival provision."[60] The panel exhibited a detailed analysis not worthy of vacatur, and Agspring cannot relitigate that issue here.

Agspring then relies on the MIPCA's integration clause, arguing that it extinguished any right to arbitrate because it "supersede[s] all prior negotiations, agreements and understandings of the Parties with respect to the subject matter hereof."[61] Here again, the panel has already decided this question, holding that the MIPCA and the 2012 Agreements were between different parties and addressed

---

[59] Interim-Award 1 at 14.

[60] *Id.* at 15.

[61] MIPCA § 10.2.

different subject matters, so the integration clause did not supersede the 2012 Agreements.

*Second*, Agspring argues that the MIPCA prevents enforcement of the advancement provision of the Services Agreement. Specifically, Agspring argues that NGP agreed the MIPCA provides "the sole and exclusive remedy" regarding that agreement and that advancement under an undisclosed Services Agreement is not among the remedies contained in the MIPCA. But again, as noted above, the panel dealt with this contention in its ruling.[62]

*Finally*, Agspring argues that it is entitled to a declaratory judgment that NGP is estopped from enforcing the advancement provision of the undisclosed Services Agreement. In making this claim, Agspring says that NGP has maintained an inconsistent position by representing in the MIPCA that it disclosed all indemnity contracts "involving the potential exposure of any [Agspring entity] after the date

---

[62] *See* Interim-Award 1 at 12–13 (holding that the 2012 Agreements are not superseded by the MIPCA because they "governed NGP's provision of advice and services to Agspring" while "[t]he MIPCA governs NGP's sale of its membership interests in Agspring, a different subject").

of this agreement of more than $200,000,"[63] that it did not have "any claim or right against Agspring" except for those contained in Schedule 4.23,[64] and that it delivered Agspring "free and clear of all of Encumbrances."[65]

But, as noted, the panel held that NGP's failure to disclose the 2012 Agreements in the schedules did not waive its rights under the 2012 Agreements' arbitration provisions.[66] Although the panel did not expressly address Agspring's estoppel arguments, implicit in its holding is that it was appropriate for NGP to assert arbitration and advancement rights under the 2012 Agreements despite the MIPCA's language. And, importantly, Agspring made its estoppel argument to the panel, and the panel specifically noted the threshold nature of advancement proceedings and limited its analysis to a facial

---

[63] MIPCA § 4.5(a)(xvi).

[64] MIPCA § 4.23.

[65] MIPCA § 5.1(a).

[66] Interim-Award 1 at 16.

reading of the 2012 Agreements.  Not only was that approach proper but, more to the point, it did not reflect a "manifest disregard of our law."[67]

### III.  CONCLUSION

Because I am satisfied the arbitration panel did not commit error justifying vacatur, and there is no legal or factual basis to revisit the arbitration panel's orders, Agspring's Motion must be DENIED and NGP's Motion must be GRANTED.  The parties shall confer and submit a form of implementing order and final judgment within ten (10) days.

Very truly yours,

*/s/ Joseph R. Slights III*

---

[67] *See SPX Corp.*, 94 A.3d 745, 750; *see also* Order 3 at 6 (observing that "[t]he Delaware Chancery Court has also ruled that advancement proceedings should be summary in nature because 'a delay in recognizing advancement rights may ultimately render those rights illusory'") (citing *Perryman v. Stimwave Techs., Inc.*, 2020 WL 2465720, at *4 (Del. Ch. May 13, 2020)).